IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DAVID P. LOYD II**,

          Plaintiff,

    v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security
Administration,

          Defendant.

_____

**Civ. No. 3:13-cv-00753-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

     Plaintiff David Loyd II brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issue before this Court is whether the ALJ erred in forming and applying plaintiff's RFC under step four and five of the sequential evaluation, and whether the ALJ fully and fairly developed the record. Because the ALJ properly formed and applied plaintiff's RFC and the ALJ properly developed the record, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

     Plaintiff applied for DIB and SSI on November 25, 2009, alleging disability since December 12, 2007 (later amended to February 15, 2008). Tr. 21, 80, 180. These claims were denied initially on January 26, 2010, and upon reconsideration on April 9, 2010. Tr. 21. Plaintiff

1 – OPINION AND ORDER

timely requested a hearing before an administrative law judge (ALJ), and appeared before the Honorable Steve Lynch on November 21, 2011. Tr. 21, 55–94. ALJ Lynch denied plaintiff's claims by written decision dated December 2, 2011. Tr. 21–32. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–3. Plaintiff now seeks judicial review.

Plaintiff, born on November 1, 1963, completed his freshman year of high school and has worked most recently as an ice cream salesman (2007–2009) and cook (2003–2007, 2008). Tr. 31, 67, 198, 212–219. Plaintiff was forty-four at the time of alleged disability onset, tr. 31, 180, and forty-eight at the time of his hearing, tr. 180.[1] Plaintiff alleges disability due to degenerative disk disease, left wrist fusion, and osteoarthritis.[2] Tr. 23

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with

---

[1] Plaintiff is a "younger person" under the Social Security Act. 20 C.F.R. §§ 404.1563(c), 416.963.
[2] Plaintiff cites additional limitations not listed as severe impairments by the ALJ, including: anxiety; Asperger's syndrome; back pain; depression; deviated septum; fatigue; insomnia; nausea; and sleep disturbance.. Pl.'s Br. 3–4, 6, 9, ECF No. 17.

respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

Plaintiff contends that the ALJ erred in forming and applying plaintiff's RFC under step four and five of the sequential evaluation. In particular, plaintiff argues: (1) the ALJ failed to consider the effects of plaintiff's sleep disturbance, insomnia, fatigue, and wrist immobility; and (2) the ALJ failed to fully and fairly develop the record.

## I. RFC Limitations

Plaintiff contends that the ALJ failed to consider plaintiff's sleep disturbances caused by his deviated septum, insomnia, and resulting fatigue. Pl.'s Br. 13–14, ECF No. 17. In addition to these sleep-related impairments, plaintiff also alleges that the ALJ "failed to provide limitations caused by [plaintiff's] left wrist immobility." *Id.* at 14.

Plaintiff, in specific reliance on his own subjective reporting to Wagner, FNP, asserts that an "ear/nose/throat specialist strongly recommended surgical correction" for his deviated septum. *Id.* at 13 (citing tr. 465). Plaintiff also generally relies on "physicians all routinely describ[ing] [his] complaints of sleep disturbance." *Id.* This Court, having reviewed the evidentiary record, identified multiple subjective complaints relating to plaintiff's sleep disturbance and/or his deviated septum. *See, e.g.,* tr. 289, 290, 292, 294, 297, 357, 364, 432, 451; *but see* tr. 401, 453 (indicating plaintiff was "negative for fatigue"). However, the only objective assertion of plaintiff's fatigue identified by this Court is a questionnaire completed by Knight,

MD, in February 2011. Tr. 357. The ALJ found that this opinion "receives limited weight."[3] As discussed below, the ALJ provided clear and convincing reasons supported by substantial evidence for partially rejecting Dr. Knight's opinion. To the extent that plaintiff argues his own subjective reports of fatigue were not incorporated into the RFC, the ALJ provided specific, clear and convincing reasons for rejecting claimant's testimony about the severity of his symptoms. As discussed more thoroughly in § II, the ALJ identified malingering behavior, *see supra* note 14, and noted that plaintiff's activities (work and daily) were "inconsistent with [plaintiff's] allegations of disability." Tr. 29; *see also* tr. 331, 345 (suggesting a less restrictive RFC). Thus, the ALJ properly rejected Dr. Knight's opinion and plaintiff's own subjective testimony as it related to his sleep related impairments.

Plaintiff also contends that ALJ erred in formulating the RFC limitations related to plaintiff's wrist impairment. *See, e.g.*, Pl.'s reply Br. 1, ECF No. 19. Defendant, in response, argues that the "ALJ properly accounted for [p]laintiff's functional limitations." Def. Br. 5, ECF No. 18. This Court looks to the ALJ's RFC formulation.

At step three,[4] the ALJ found that plaintiff had the severe impairment "left wrist fusion." Tr. 23. The ALJ also noted:

---

[3] The ALJ found:

> Dr. Knight saw the claimant on one occasion and proffered an opinion that [was] not supported by the objective medical evidence. More importantly, he appeared to base his opinion solely on the claimant's subjective pain complaints. The objective medical evidence found in the longitudinal records does not support the level of limitation proposed by Dr. Knight . . . .

Tr. 30; *see also* tr. 29 ("Notably, the claimant saw Dr. Knight one month after Dr. Peffley suspected the claimant of merely attempting to accumulate evidence and denied his request for a handicap parking placard.").

[4] 20 C.F.R. § 404.1520(a)(4)(iii) provides:

> At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

> A review of the claimant's earnings record show that he continued to post income for several years after sustaining the wrist fracture. Clearly, the wrist fracture did not prevent the claimant from working. Nevertheless, the undersigned finds the claimant's fused wrist to be a severe impairment.

Tr. 24 (citation omitted). At step four,[5] the ALJ determined that plaintiff "can perform no more than frequent fingering [and handling][6] with his left, non-dominant hand." Tr. 26.

Plaintiff asserts that these findings fail to incorporate plaintiff's limited range of "wrist/finger motion." Pl. Br. 15, ECF No. 17. Plaintiff directs this Court's attention to a questionnaire completed by Dr. Knight in February 2011. *See* tr. 360. In that questionnaire, Dr. Knight indicated that plaintiff had "no motion in wrist," which affected plaintiff's "Handling (gross manipulation)" and "Fingering (fine manipulation)." *Id*. Dr. Knight's check-list answers were based upon a single contact with plaintiff in April 2010. Tr. 356.

In contrast, Peffley, DO, met with plaintiff eight different times. *See* tr. 290, 292, 294, 296, 403, 405, 419, 421. On March 16, 2010, Dr. Peffley indicated that plaintiff had: "limited flexion/extension in left wrist. Intact distal strength and sensation in median, ulnar, and radial distribution (although the latter is more difficult to assess given the lack of wrist flexibility)." Tr. 419. Dr. Peffley further elaborated that plaintiff declined recommended treatment[7] and requested a handicap parking placard because "of the advice/direction he was given." Tr. 420. On March

---

[5] 20 C.F.R. § 404.1520(a)(4)(iv) provides:

> At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(citations omitted).

[6] The ALJ mistakenly omitted "and handling" from his RFC findings. However, during the administrative hearing, the ALJ included "and handling" within his hypothetical question posed to the VE. *See* tr. 89. Thus, any omission in the written decision constitutes a harmless error. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that "[w]e have . . . deemed errors harmless where the ALJ misstated the facts . . . but we were able to conclude from the record that the ALJ would have reached the same result absent the error." (citation omitted)).

[7] "[Plaintiff] has not been to OT. He has no desire to go to OT (does not see the point in it because anything he does hurts it). OT may be able to help develop muscles and improve functionality. Patient can always request a referral should he decide it might be helpful. He has not seen an orthopedic surgeon since after the surgery in 2002."

5 – OPINION AND ORDER

30, 2010, Dr. Peffley again met with plaintiff and plaintiff reported that "PT is helping a little, they're starting to stretch the tendons in [plaintiff's] hand." Tr. 421. However, "[m]ost of this appointment was spent in antagonistic discussion." *Id*. Following this appointment, Dr. Peffley indicated that he was "not sure [he] would like to continue this relationship any further." Tr. 422.

Dr. Knight, having met with plaintiff a single time, is not a treating physician. *See, e.g.*, *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (indicating that an ongoing treatment relationship with a claimant is a key factor in determining whether a physician is treating). "To reject his opinion, the ALJ had to give clear and convincing reasons." *Reginnitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (citation omitted). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. (citation omitted). In according "limited weight" to Dr. Knight's opinion, the ALJ articulated clear and convincing (and specific and legitimate) reasons supported by substantial evidence in the record.

First, the ALJ identified many of Dr. Peffley's treatment notes. Dr. Peffley's findings, unlike Dr. Knight's findings, did not suggest "no motion in wrist." Dr. Peffley found that plaintiff had "limited flexion/extension in left wrist." Tr. 419; *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("The opinion of a treating physician is given deference because he is employed to cure and has a greater opportunity to know and observe the patient as an individual." (citation and internal quotation marks omitted)). Second, plaintiff continued to engage in work activities after sustaining his wrist fracture inconsistent with "no motion" in wrist. *See* tr. 24; *see also* tr. 185 (indicating that plaintiff's highest annual earnings occurred in 2006). Third, plaintiff also continued to engage in daily activities

6 – OPINION AND ORDER

inconsistent with "no motion" in wrist. *See supra* § II (discussing plaintiff's daily activities). Fourth, the ALJ identified malingering behavior. Tr. 29 ("Notably, the claimant saw Dr. Knight one month after Dr. Peffley suspected the claimant of merely attempting to accumulate evidence and denied his request for a handicap parking placard."); *see also supra* note 14. Fifth, the ALJ expressed concern that Dr. Knight based "his opinion solely on the claimant's subjective pain complaints." Tr. 30; *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (finding that an ALJ gave specific and legitimate reasons for partially rejecting a physician's opinion where the opinion was "based almost entirely on the claimant's self-reporting."). These reasons are sufficient to reject Dr. Knight's opinion to the extent that it is inconsistent with the RFC.

Plaintiff appears to also suggest that Dr. Peffley's findings in March 2010 are inconsistent with the ALJ's RFC formulation. Pl.'s Reply Br. 2, ECF No. 19. Although the ALJ cites Dr. Peffley's treatment notes from November 2009, *see* tr. 30 (citing tr. 294), the ALJ clearly considered Dr. Peffley's treatment notes from both March 2010 appointments, *see* tr. 27–28. Plaintiff fails to articulate how "limited flexion/extension in left wrist" is not encompassed within the RFC. Plaintiff was limited to light work, "lifting 20 pounds occasionally and 10 pounds frequently,[8]" and "no more than frequent fingering [and handling] with his left, non-dominant hand." Tr. 25–26; *see also* 20 C.F.R. § 404.1567(b) (defining light work). In contrast to plaintiff's suggestion, substantial evidence supports the RFC as formulated.

For example, in January 2010, Dr. Kehlri submitted a physical assessment and found that plaintiff had not established any manipulative limitations (e.g., handling or fingering). Tr. 331;

---

[8] "'Frequent' means occurring from one-third to two-thirds of the time." *SSR 83-10*, 1983 WL 31251, at *6 (Jan. 1, 1983).

*see also* tr. 345 (Dr. Berner, in April 2010, affirmed Dr. Kehlri's suggested RFC). The ALJ explicitly adopted a RFC more restrictive than Dr. Kehlri's assessment and accorded Dr. Kehlri's opinion "partial weight." Tr. 29. In November 2011, Dr. Rullman, an impartial medical expert, testified during the administrative hearing that he had reviewed Exhibits 1F through 15F (including Dr. Knight's more restrictive findings) and concluded that "the claimant [did not] meet[] or equal[] any listing of the commissioner" under step three. Tr. 85; *see also* tr. 29 (identifying Dr. Rullman's opinion as "further persuasive evidence"). These findings, in combination with plaintiff's work, *see infra*, and daily activities, *see supra* § II, represent substantial evidence supporting the RFC.

## II. Development of the Record

Plaintiff contends that the ALJ "improperly developed the record about plaintiff's mental health conditions," Pl.'s Reply Br. 5–6, ECF No. 19, because mental health documentation submitted the day of the hearing was not included in the evidentiary file considered by the ALJ, Pl.'s Br. 12 n. 3, ECF No. 17; *see also* tr. 59 (indicating that plaintiff submitted "probably three or [four] hundred pages of material"). In response, defendant contends that the ALJ did incorporate this mental health documentation into the record (tr. 363–501) and, to the extent that plaintiff was diagnosed with Asperger's syndrome in mid-2011, that diagnosis constitutes new evidence not previously submitted. Def.'s Br. 11–12, ECF No. 18. This Court, having reviewed the record, finds that the ALJ *did* incorporate the documentation submitted the day of the hearing.[9] The record includes no reference to Asperger's syndrome. This Court's remaining

---

[9] Plaintiff's former counsel submitted a cover letter in addition to a considerable number of medical records. Tr. 59; *see also* tr. 489 (cover letter). Plaintiff's cover letter identified eight additional sources of medical information. Tr. 489. That information is included in the evidentiary record as follows:

Good Days, Bad Days Mental and Physical dated 11/09/2011, **tr. 490–501**;
Polk County Mental Health dated 1/13/2011, **tr. 424–33**;

inquiry focuses on whether the submitted evidence triggered the ALJ's duty to develop the record.

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)) (internal quotation marks omitted). "This duty exists even when the claimant is represented by counsel." *Id*. (citing *Brown*, 713 F.2d at 443). "Ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks omitted). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id*. (citations omitted).

Plaintiff argues that his statements during the administrative hearing,[10] combined with an Adult Behavioral Health (ABH) Assessment conducted at Polk County Mental Health,[11] tr. 424–33, put the ALJ on notice that additional treatment records remained and the record needed to be more fully developed. Pl.'s Reply Br. 6, ECF No. 19. This Court interprets plaintiff's argument

---

Kaiser Health dated 12/17/2001-5/09/2002, **tr. 363–98**;
Oregon Family Health dated 02/23/2010-3/30/2010, **tr. 403–23**;
Flaming Medical Center dated 07/20/2007-07/09/2007, **tr. 399–402**;
West Valley Hospital ER record dated 10/27/2011, **tr. 471–75**;
Dr. Wilson dated 09/17/2007-10/31/2011, **tr. 476–88**; and
Northwest Human Services dated 09/16/11-03/02/201, **tr. 434–70**.

[10] During the administrative hearing, plaintiff indicated that he had depression and that he had seen counselor Sue Larsen and counselor Paul Morris with Polk County Mental Health. Tr. 62–63.
[11] On January 18, 2011, Larsen, LPC, CADC I, diagnosed plaintiff with 311 Depressive Disorder Not Otherwise Specified (NOS), but ruled out 296 Major Depressive Disorder. Tr. 433. A "311 Depressive Disorder NOS" includes, but is not limited to "[s]ituations in which the clinician has concluded that a depressive disorder is present but is unable to determine whether it is primary, due to a general medical condition, or substance induced. *Diagnostic and Statistical Manual of Mental Disorders* 382 (rev. 4th ed. 2000).

in reply to defendant's brief as alleging that the ALJ erred in his respective credibility determinations of plaintiff's symptom testimony and counselor Larsen's ABH assessment.[12]

As to plaintiff's credibility, an ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of [his] symptoms." *Smolen*, 80 F.3d at 1281. If a claimant meets the *Cotton* analysis[13] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

The ALJ, in evaluating plaintiff's alleged depressive disorder (among other symptoms and complaints), found that "there is nothing to show that they are of such severity as to cause more than minimal vocational limitations." Tr. 24. First, the ALJ noted that on at least two occasions plaintiff indicated he sought medical attention to bolster his case.[14] Tr. 24–25, 27; *see*

---

[12] Neither the ALJ nor counselor Larsen (nor any other expert) found that "the evidence of [plaintiff's] mental impairment was ambiguous, or that [they] lacked sufficient evidence to render a decision." *Tonapetyan*, 242 F.3d at 1150.

[13] "The Cotton test imposes only two requires on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–408 (9th Cir. 1986)).

[14] On March 16, 2010, Dr. Peffley noted:

> Near the end of the visit, the patient remembered one last thing the lawyer recommended. He stated that if he could get a handicap parking placard, "it would help my case." He states this would help him if he went to a "big store" and had to walk all the way to the back of the parking lot with "a lot of stuff." When I offered that he could push a cart instead of carrying it, he stated, "There are still some times that it would be really helpful to have that."
> . . .
> At the end of the visit when I told him I was not inclined to sign a Handicap Parking Pass for him, he stated, "If I promise not to use it, would that help you make up your mind?" I told him that indeed it would. It confirms my decision to NOT sign one. I stated that he has

*also Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991) ("An adjudicator may use ordinary techniques of credibility evaluation to test a claimant's credibility." (citation and internal quotation marks omitted)). Second, the ALJ found that "[t]he claimant's daily activities are consistent with the [RFC]." Tr. 29. The ALJ specifically referred to an evaluation conducted by Kruger, Psy.D., in January 2010 and found:

> [Plaintiff] typically woke up at 7:00 AM, and then drove his girlfriend to her job in Salem. Thereafter, he would return home, watch television, sit in his recliner, and relax. He performed household chores when his back was not "aggravated." The chores included washing the dishes and laundry. He picked his girlfriend up from work in the afternoon, and upon returning home, they would have something to eat and watch television. He typically went to bed between midnight and 1:00AM. The claimant also reported being independent with self-care, meal preparation, and managing his hygiene.

Tr. 29 (citing tr. 303–304); *see also Morgan*, 169 F.3d at 600 (finding that a claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" evidenced an ability to work). In contrast, during his administrative hearing, plaintiff testified that his daily activities were more limited. *See, e.g.*, tr. 65 ("I stay home pretty much all the time. The only time I really get out of the house is if I have a counselor appointment or a doctor's appointment."). The ALJ pointed out that this decline was not supported by medical evidence.

---

> not needed one up to this point and is clearly asking for it now because of the advise/direction he was given. He again stated, "Well it would really help out sometimes." I told him I'm sure it would, but I was reserving those Placards for patients who needed them EVERY time.

Tr. 419–20. On January 18, 2011, counselor Larsen documented, in relevant part:

> David is self-referred. He says part of the reason he is here is because he is applying for Social Security and they have added depression into his other physical health concerns and he says he needs to show that he is working on both of these issues.

Tr. 424.

Tr. 29. Third, in reliance on Dr. Kruger's evaluation, Dr. Hennings's psychiatric review,[15] Dr.

Boyd's mental summary,[16] and shortcomings within counselor Larsen's ABH Assessment, *see*

*infra*, the ALJ found "there is nothing to show that [plaintiff's symptoms and complaints relating

to depression] are of such severity as to cause more than minimal vocational limitations," tr. 24.

In reference to Dr. Kruger's January 2010 evaluation, the ALJ found:

> The claimant reported never having any psychiatric hospitalization.
> However, he reported receiving some counseling in 2001, after the break-up
> of a relationship. Upon examination, Dr. Kruger described the claimant as
> cooperative, please mild mannered, in fair spirits. He appeared to sit
> comfortably during the evaluation. He was an adequate historian. He was
> fully oriented and showed a fair ability to sustain attention on brief, basic,
> routine repetitive tasks. He repeated seven digits forward and four digits
> backward. His immediate, recent past, and remote memories appeared to be
> intact. He performed simply mathematic problems.
>
> . . .
>
> According to Dr. Kruger, the claimant neither demonstrated nor reported
> any psychiatric symptoms reflective of either a psychotic or an anxiety
> disorder.

Tr. 24 (citing 303–306). Overall, these reasons are specific, clear and convincing; sufficient to

reject claimant's testimony about the severity of his symptoms.

    As to counselor Larsen's ABH assessment, the ALJ found "[b]ased on the totality of the

record . . . the counselor's assessment [is not] persuasive evidence." Tr. 25. Counselor Larsen, a

non-physician, diagnosed plaintiff with 311 Depressive Disorder NOS in January 2011. Tr. 433.

Dr. Kruger, in contrast, diagnosed plaintiff with "309.0 Adjustment disorder with depressed

mood." Tr. 306; *see also SSR 06-03P*, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("The fact that a

---

[15] On January 20, 2010, Dr. Hennings, having reviewed Dr. Kruger's evaluation, concluded that plaintiff's functional limitations included: (1) no restrictions of activities of daily living; (2) no difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence or pace; and (4) no episodes of decompensation, each of extended duration. Tr. 324. Dr. Hennings also indicated that plaintiff had "adjustment d/o w/depressed mood" that was not severe. Tr. 314, 319.

[16] On March 26, 2010, Dr. Boyd affirmed Dr. Henning's RFC conclusions. Tr. 344.

medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'"). Dr. Hennings, having reviewed Dr. Kruger's evaluation, determined that plaintiff's only functional limitation was "mild" "difficulties in maintaining concentration, persistence or pace." Tr. 324; *see also* tr. 319 (diagnosing plaintiff with "adjustment disorder and depressed mood"). Boyd subsequently reviewed and affirmed Dr. Hennings's findings. Tr. 344. The ALJ explicitly adopted Dr. Hennings's assessment and noted that "Dr. Boyd's summary is further persuasive evidence." Tr. 25. In addition to this medical evidence, the ALJ also emphasized that plaintiff sought the ABH assessment "not for genuine treatment, but instead to generate evidence for this appeal." Tr. 25; *see also supra* note 14. Combined, these reasons are sufficient to reject counselor Larsen's ABH assessment.

In any event, plaintiff has not shown that his "mild" difficulties in maintaining concentration, persistence or pace resulted in any functional limitations that the ALJ failed to consider. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005). "The ALJ presented all of [plaintiff's] limitations and restrictions supported by the record to the [VE]." *Id*.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 21st day of July, 2014.


_____ s/ Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**

13 – OPINION AND ORDER